Reilley v. Roberts.

CAMILLA REILLEY

v.

JOSEPH E. ROBERTS et ux.

1. In an exchange of lands, the defendant agreed to cancel certain judgments which were liens on part of his premises, and to secure the difference between the properties in value ($3,000) by giving complainant a first mortgage on a farm in Delaware, the value of which he grossly exaggerated. He made provision for satisfying the judgments, but never in fact did so, and they are still uncanceled of record. The Delaware mortgage was a second mortgage. It was accompanied by another mortgage, on lands in this state, which he misrepresented as to quantity, to indemnify complainant for loss under the Delaware mortgage. The Delaware property, on a subsequent fore-closure, produced only enough to pay the first mortgage on it. Complainant sold the property covered by the judgments, and warranted the title.—*Held*, that she is entitled to specific performance of the agreement as to canceling the judgments, and also to relief on account of defendant's false and fraudulent representations as to the mortgages, and the $3,000 were therefore declared a lien on the premises conveyed to defendant, subject to prior *bona fide* encumbrances.

2. Complainant's claim of damages for defendant's failure to perform his contract, cannot be sustained in equity. The remedy is at law.

Bill for relief. On final hearing on pleadings and proofs.

*Mr. H. A. Drake* and *Mr. J. Wilson*, for complainant.

*Mr. B. D. Shreve* and *Mr. P. L. Voorhees*, for defendants.

THE CHANCELLOR.

The complainant seeks, by means of this suit, to compel the defendant Joseph E. Roberts to cancel of record certain judgments against him, which are liens upon land in Camden, conveyed by him to her in an exchange between them, and to obtain a lien on the real property conveyed by her in the exchange for $3,625 of the money he was to pay her as part of the consid-

eration. The exchange was made in January, 1878. The property conveyed by her was a lot of land in Atlantic City, on which was a large house then known as the "Beaumont House," and the furniture therein, except certain articles. The property was then used by her as a boarding-house in summer and as a residence in winter. The property conveyed by him was certain houses and lots in Camden, all of which were subject to encumbrance, both by mortgage and judgment, but he was to convey it to her free of all encumbrance except the mortgages which were specified in the written agreement between them. There was a difference of $3,625 in her favor, in the valuations of the properties. For this sum he was to give her his bond, payable in one year, to be secured by a mortgage (to be the first encumbrance) on a farm of his, of about eighty-five acres, in the state of Delaware. There was already a mortgage on that property, but he bound himself to cancel it of record before the time fixed for the exchange, or to pay her the amount of it. He did neither, but gave her a bond and mortgage made by his brother-in-law, James C. Jaquett, on a tract of land, said in the mortgage to contain five hundred and fifty-six acres, known as the Forkbridge tract, in Shamong township, in Burlington county, to indemnify her against all loss or damage which she might sustain by reason of the insufficiency of the Delaware land to pay her mortgage. By the agreement between them, it was stipulated that the conveyance of her property was to be made to Roberts and his wife. It was, in fact, made by Roberts's procurement to his wife alone. He did not convey his property to the complainant free from all encumbrance except that of the mortgages thereon, but some of it, at least, was subject to the lien of four judgments which had been recovered against him, three by David H. Wolf and the other by Henry Robbins; and though he appears to have made provision for satisfying them, yet he did not, in fact, do so, but gave to her only the agreement of his attorney, who held the Wolf judgments by assignment, not to look to the property conveyed to her for the payment of the judgments, or in any way to disturb or molest her or any of her grantees or any occupant of the property, for or by reason

of the judgments. As to the other judgment, provision appears to have been made for paying it, but payment was deferred because, and only because, of a dispute between Roberts and the plaintiff therein as to the amount due thereon, but no release or covenant not to sue was given to the complainant. Though in the answer it is said that the property was, before the filing of the bill, released from the Wolf judgments, there is no evidence of it, and Roberts, in his testimony, admits that the four judgments are still uncanceled of record. The complainant has sold all the Camden properties, and is bound by her warranty thereof to protect the title against the judgments. She is entitled to a decree for specific performance of the agreement with respect to them. As before stated, the agreement was that defendant should convey the property to her free from all encumbrances except the mortgages. Although it appears that her attorney passed the title to the property conveyed to her, and was satisfied with the covenant not to sue as to the Wolf judgments, and the fact that Roberts' attorney held in his hands the money to satisfy the other one, that does not disentitle her to the specific relief of having her property cleared of the encumbrance of the judgments.

The principal contest in the case is on her claim to a lien upon the Atlantic City property for $3,625. Since this suit was begun, the Delaware farm has been sold under foreclosure of the first mortgage thereon, and, at the judicial sale under the foreclosure, it was bought in by the complainant's husband for $695, the amount, or very near it, of the first mortgage. Whether the complainant is entitled to the lien she claims, depends on the decision of the disputed question whether Roberts defrauded her in inducing her to accept, as security for the $3,625, the Delaware mortgage and the mortgage on the Forkbridge tract, for if he did, it is within the power of this court to protect her against the consequences of his fraud, by charging the amount upon the Beaumont House property. It appears quite clear that she would not have taken that security unless she had been satisfied that the property mortgaged was abundant security. She knew that she would need the money to take up

the encumbrances on the property received by her in exchange, all of which, as before stated, was subject to mortgage, and the mortgage on each property amounted to a very considerable part of the value. It is most manifest that she was led to believe, and was persuaded by Roberts, that the Delaware mortgage would be a most available security—one readily convertible into cash—and that had she not confided in his representations on that head, and especially as to the value of the property, she would not have taken it. She testifies that, in a conversation between them, on the 2d of December (the agreement for exchange is dated the 12th), she told him she had seen his properties, and that she would not take so much encumbered property; that she must have four of the houses clear, so as to enable her to pay the debts on the others; that he said that, though he was a rich man, he had not then the ready cash to clear them, as he had been building twenty-four houses, and that had taken all his spare cash, but that he had a valuable farm of eighty-seven acres, in Delaware, which was worth $8,500; that he had seen it, and knew what it was worth, and that it had paid him ten per cent. of that amount ever since he had owned it; that he would give her a mortgage on it for the amount ($3,500) needed to clear four of the small houses, and with the mortgage would give his own and his wife's bond, to secure the payment of the money at the end of a year, or whenever the mortgagees (of the four houses) should demand their money; or, if she preferred it, would make the bond payable in six months; that she proposed to him to give her a mortgage of $6,000 on the Beaumont House property (which was unencumbered), she to take the rest of the price of her property in encumbered property, but he declined, saying he wanted her property clear, so as to obtain money on it; that it being so near home, he could get money on mortgage on it more readily than he could on the Delaware farm. And she says he also said that there was a small mortgage of somewhat over $500 on the farm, but he would clear that off and give her a first mortgage. She further testifies that she then told him how she was situated—that she had three small children; that her husband was in delicate health, and that she was depending

Reilley v. Roberts.

on her property (the Beaumont House) for her support; that she made enough there in the summer time to keep her family the whole year round; that it was a vital matter to her, and that if he could not pay the mortgage on demand, he should say so. She says he gave her assurance of his ability to do so, and named persons of whom, in case of his failure to do it out of his own means, he could readily obtain money on that investment. Relying upon his representations, she agreed to make the exchange. Between that time and the time when the agreement was signed, she was advised by her lawyer to make inquiry about the farm, and she sent her husband to Delaware on the errand. In Wilmington he was credibly informed that there was no farm in the locality of the farm in question, worth the half of $8,500. On obtaining this information, she sent for Roberts, and told him what she had learned—that the farm was not worth $8,500, as he had represented it to be, and he replied that it was, and he could prove it, and that he would like to know who had given her such wrong information. She told him, but he still insisted that the farm was worth $8,500. She, however, was unwilling, in view of the information just referred to, to make the exchange, unless he would give her more security, and he proposed to give her, as additional security, a second mortgage on a house in Broadway, Camden, or a first mortgage on a tract of land of five hundred and sixty acres (as he said), in Shamong township, Burlington county, which he said he could control, and which he said was worth $4,000. He gave her a reference to ascertain the value of that tract. She inquired of the person to whom he referred her, who informed her that the tract was of the value he had fixed upon it, and she then agreed to make the exchange, and it was made accordingly. Although he denies the truth of her testimony on the subject of the representations which she says were made by him to her as to the value of the farm, and his personal knowledge on the subject, and also as to his statement as to the contents of the Forkbridge tract—that it contained five hundred and sixty acres—she is corroborated and he is not, and the great weight of the testimony is in her favor. The statements which she and her husband and Helena Baulig all

say were made by him to her on the subject of the value of the farm, as to what he paid for it, his personal knowledge of its value and the annual income he had received from it, are admitted to be untrue, and they were all substantial important misrepresentations of existing facts materially affecting the character and value of the mortgage. *Perkins* v. *Partridge, 3 Stew. Eq. 82.* So, too, as to the contents of the Forkbridge tract. It contains only about three hundred and fifty acres, instead of five hundred and sixty. On the subject of this representation, the mortgage itself and the bond which it was given to secure are strong corroboration of the complainant's testimony. Both state the contents to be five hundred and fifty-six acres, and both appear, judging from the handwriting, to have been drawn by Jaquett himself, who, as the owner of the property, must have been aware of its true contents. His deed informed him. And here it will be convenient to dispose of an objection made to the testimony of Helena Baulig and Mr. Reilley, both of whom speak as to the representations. The defendants insist that the testimony of these witnesses given on recall should be stricken out, because they were re-examined without an order from the court; but as to the former, when she was called to the stand the second time, she was not examined as to the same matter as to which she had testified previously, but on an entirely different one; and as to both, their re-examination was not objected to when they were sworn, and therefore objection to it now will not be sustained. *Osborne* v. *O'Reilly, 7 Stew. Eq. 60.* It will be proper here to take notice of a contrariety in the testimony as to the object of giving the Forkbridge mortgage. Roberts insists that it was given in consideration that he was not to be required to pay off the first mortgage on the farm, while, on the other hand, the complainant insists that it was given merely as additional security, because she was not satisfied of the truth of his representations as to the value of the farm, and that he was not, by the giving of it, absolved from his agreement to pay off the first mortgage. The defendants further insist that the complainant is bound by the statements of her bill on that head, which are that it was given as indemnity against the first mortgage.

I do not deem the matter essential to the decision of the cause. The bond which that mortgage was made to secure, however, declares by its recital the purpose for which it was given—the better securing of the payment of the debt which the mortgage on the farm was given to secure—and the same purpose appears from the condition of the bond. It should be stated that Roberts, in about three months after the exchange, put a mortgage of $6,000, still unpaid, upon the Beaumont House property, and when called upon by the complainant for payment of his bond to her, declared his inability to pay, and has never paid her. The mortgage on the Delaware farm was given for the whole difference, $3,625, between the value of the Beaumont House property and furniture and the estimated value of the Camden properties as fixed by the parties. It is impossible to resist the conclusion from the evidence that the complainant was induced, by the fraudulent representations of Roberts, to accept the mortgages in question. He makes no effort whatever to show that the Delaware farm and the Forkbridge tract were even adequate security for the $3,625. At judicial sale, the farm brought only $695, the amount of the first mortgage and costs, and there is no evidence that it would have brought any more at the time when the exchange was made. Roberts admits that he told the complainant that the mortgage would be just as good on the farm as it would be on the Beaumont House property. The contents of the Forkbridge tract are not so great by some two hundred acres as Roberts represented. The complainant is entitled to relief from the consequences of his fraud as far as it can be equitably accorded. Though his wife holds the title to the Beaumont House property, she evidently never paid any consideration for it. The fact that she holds the title will not, under the circumstances, prevent charging it with a lien for purchase-money. The $3,625 and the interest due thereon should be charged upon that property (subject to the $6,000 mortgage already thereon), and so much of the furniture which passed therewith by the exchange as is still in the possession of and owned by the defendants. Roberts will be decreed to specifi-

20

cally perform his contract to remove the encumbrance or cloud of the judgments from the Camden property and to pay costs.

The complainant's claim for damages, by reason of Roberts's failure to perform his agreement with her, cannot be sustained. That cause of suit does not belong to this forum. *Iszard* v. *May's Landing Co., 4 Stew. Eq. 511; Palys* v. *Jewett, 5 Stew. Eq. 302.*